UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AARON ROBINSON #858448,

    Plaintiff,                                   Hon. Robert J. Jonker

v.                                           Case No. 1:20-cv-449

KEVIN BREGE,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Now before the Court is Defendant Kevin Brege's Motion for Summary Judgment based on Plaintiff's failure to exhaust his administrative remedies. (ECF No. 21.) Plaintiff has filed a response, and Defendant has filed a reply. (ECF Nos. 25, 28.) Plaintiff also filed a surreply (ECF No. 29), which is unauthorized because it was filed without leave of the Court. Accordingly, I will not consider it in addressing Defendant's motion.

Pursuant to 28 U.S.C. § 636(1)(B), I recommend that Defendant's motion be **DENIED.**

### I.  Background

Plaintiff, a prisoner incarcerated with the Michigan Department of Corrections, sued Defendant pursuant to 42 U.S.C. § 1983, alleging that Defendant violated Plaintiff's Eighth Amendment rights while he was housed at the Earnest Brooks Correctional Facility (LRF) in Muskegon, Michigan. Plaintiff alleges that on September 20, 2019, he injured his right ankle and was incapable of walking without assistance due to his injury. After Plaintiff was taken to healthcare, a doctor examined him and determined that he should have a medical detail for crutches. Plaintiff returned to his unit using the crutches and provided his medical detail to the Unit Supervisor, Melton. (ECF No. 1 at PageID.8.) Plaintiff alleges that on October 23, 2009, he

1

spoke with Defendant about moving him to another wing that would be more accommodating to a prisoner who required crutches. When Plaintiff refused to move to a different unit, Defendant ignored his medical detail and punished him by taking his crutches away. (*Id.* at PageID.10–11.) Several days later, Defendant transferred Plaintiff from LRF to another facility, which required Plaintiff to ride on a bus for several hours with shackles around his injured ankle and without his crutches. (*Id.* at PageID.11.)

## II.  Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting

*Cockrel v. Shelby Cty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### III. Discussion

Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative remedies before filing a lawsuit with respect to prison conditions under 42 U.S.C. § 1983. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA," which the defendant bears the burden of establishing. *Id*. With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion," defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 sets forth the applicable grievance procedure for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of Internal Affairs." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ Q (effective 03/18/2019). If this attempt is unsuccessful (or is inapplicable), the prisoner may submit

3

a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* The issues asserted in a grievance "should be stated briefly but concisely," and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within 10 business days of the response, or if no response was received, 10 business days after the response was due. *Id.* at ¶ DD. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ HH. The Step III grievance must be submitted within 10 business days after receiving the Step II response, or if no Step II response was received, within 10 business days after the date the Step II response was due. *Id.*

In support of his motion, Defendant submits Plaintiff's Step III Grievance Report as of June 11, 2020, which shows that Plaintiff had not appealed any grievance to Step III prior to filing his complaint in this case. (ECF No. 22-3.) Defendant does not dispute that Plaintiff pursued a grievance through Steps I and II before filing his complaint, as Plaintiff attached copies of those forms to his complaint as Exhibit H. (ECF No. 1-8.) Defendant further acknowledges that Plaintiff attached an unsworn declaration to his complaint, in which he stated that he mailed his Step III grievance appeal to the MDOC Director's Office on February 11, 2020, but as of April 17, 2020, had not received a response. (ECF No. 1-8 at PageID.42.) Nonetheless, Defendant argues that Plaintiff offers nothing to corroborate his conclusory allegation that he actually submitted his Step III grievance form or that that the MDOC ever received it.[1] (ECF No. 22 at PageID.109.)

---

[1] Defendant's reliance on *Gill v. Suburban Cadillac of Lansing, LLC*, No. 1:18-cv-676, 2020 WL 207199 (W.D. Mich. Jan. 14, 2020), is unconvincing. *Gill* and the case it cites, *Mav of Michigan, Inc. v. American Country Insurance Co.*, 289 F. Supp. 2d 873 (E.D. Mich. 2003), do not stand for the proposition that a court is free to disregard a party's testimony based on his or her personal

4

In response to Defendant's motion, Plaintiff submits a Step III Grievance Response Form dated October 19, 2020, which he contends corroborates his assertion that he mailed his Step III response to the MDOC prior to filing his complaint. (ECF No. 25-2 at PageID.156.) The identifier on the Step III response corresponds to the identifier on Plaintiff's Step I and II forms. Plaintiff also attaches a copy of his Step III appeal form containing a notation from the Step II respondent, which the MDOC apparently returned to Plaintiff with the Step III response.

In my judgment, the documents Plaintiff attaches to his response, when considered along with Plaintiff's declaration attached to his complaint, create a genuine issue of material fact as to whether Plaintiff submitted his Step III appeal on February 11, 2020, more than two months before Plaintiff filed his complaint. While Plaintiff's declaration is not properly sworn, Defendant does not object to it on that basis. Moreover, to the extent Plaintiff's declaration contains his first-hand

---

knowledge simply because it is not corroborated by other evidence in the record or because it is at odds with the testimony of other witnesses who offer contradictory versions of the facts. Indeed, such an argument invites clear error by asking the Court to disregard well-established law that a court cannot resolve credibility issues on summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]"). The plaintiff in *Gill* alleged that her former employer—a car dealership—discriminated against her based on her race. When asked about the basis of her allegation, the plaintiff simply offered the conclusory statement: "My leads were stolen because I was an African American female." 2020 WL 207199, at *4. No one had told her this, nor did she offer any evidence of an admission by the defendant of this fact; it was simply the plaintiff's supposition. Had the plaintiff testified that a representative of the defendant had told her that her leads were being assigned to other salespersons because she was African American, the *Gill* court would have been faced with an entirely different situation, similar to that in this case, where Plaintiff states that he mailed his Step III grievance to the MDOC in February 2020. Plaintiff's testimony is not conclusory, but instead based on his personal knowledge of the actions that he took. It is true that a narrow class of cases exists where a court is free to disregard a party's version because contrary evidence in the record—typically a video or similarly irrefutable evidence—is so powerful that "no reasonable jury could believe [that version]." *Scott v. Harris*, 550 U.S. 372, 380 (2007). There is no such evidence here. Finally, labeling a party's testimony self-serving, absent, for example, prior contradictory deposition testimony, is an argument without traction, as testimony by a party is inherently self-serving. "Although perhaps not as strong as some other evidence might be, self-serving statements can create a genuine dispute of material fact to be resolved at trial." *Davis v. Gallagher*, 951 F.3d 743, 750 (6th Cir. 2020).

knowledge, Plaintiff would certainly be capable of presenting such testimony in admissible form at a bench trial or evidentiary hearing.

Defendant argues that the Step III response and the Step III appeal form show that Plaintiff actually submitted his Step III appeal in August 2020, not in February 2020 as Plaintiff claims. Defendant points to a notation at the top of the Step III appeal form stating, "Rec'd OLA 8/21/2020 – GT #119022," which, he argues, shows that the Step III appeal was not received by the OLA (Office of Legal Affairs) until August 21, 2020, and that Plaintiff did not submit his Step III appeal until that time. Defendant's argument lacks merit because he fails to present an affidavit or declaration from an individual at the OLA familiar with that document and the notation to explain its meaning and significance and the circumstances around receipt of Plaintiff's Step III appeal. Moreover, the notation and subsequent Step III response are not necessarily inconsistent with Plaintiff's claim that he submitted his Step III appeal in February 2020. For example, an August 2020 submission would have clearly been untimely, but Mr. Russell did not reject the appeal on that ground, perhaps acknowledging that OLA had misplaced or mishandled Plaintiff's timely-filed appeal. In short, Defendant, as the party with the burden of proof, has failed to show that the evidence is such that no reasonable trier of fact could find for Plaintiff. *Calderone*, 799 F.2d at 259.

### IV.   Conclusion

For the foregoing reasons, I recommend that the Court **deny** Defendant's motion for summary judgment.

Dated: March 5, 2021                     /s/ Sally J. Berens  
                                          SALLY J. BERENS  
                                          U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).