UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AARON ROBINSON #858448,

        Plaintiff,                               Hon. Robert J. Jonker

v.                                                Case No. 1:20-cv-449

KEVIN BREGE,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

Presently before me are Defendant's Motion for Summary Judgment (ECF No. 64), and Plaintiff's Motion for Summary Judgment (ECF No. 66). Each party has responded to the other party's motion. Neither party has filed a reply. Therefore, the motions are ready for decision.

Pursuant to 28 U.S.C. § 636(1)(B), I recommend that Defendant's motion be **GRANTED IN PART AND DENIED IN PART** and that Plaintiff's motion be **DENIED.**

### I. Background

Plaintiff, a prisoner incarcerated with the Michigan Department of Corrections, has sued Defendant Resident Unit Manager (RUM) Keven Brege pursuant to 42 U.S.C. § 1983, alleging that he violated Plaintiff's Eighth Amendment rights while he was housed at the Earnest Brooks Correctional Facility (LRF) in Muskegon, Michigan.

On September 20, 2019, Plaintiff rolled his ankle when he jumped from his top bunk. Plaintiff was seen by healthcare and was diagnosed with a mild lateral ankle sprain. (ECF No. 57-2 at PageID.316.) Plaintiff was given a medical detail for a bottom bunk, an ace wrap, crutches, and ice with meals. Except for the ice, which was to expire on September 23, the medical detail was to expire on September 25, 2019. (ECF No. 66-1.) On September 25, 2019, Plaintiff was re-

1

examined by Richard Worel, M.D., who determined that Plaintiff's ankle had not improved. Therefore, he issued a second medical detail for crutches, an ankle brace, and a bottom bunk. (ECF No. 66-2.) The second medical detail was to continue through November 25, 2019. (*Id.*)

From the time Plaintiff received his first medical detail through late October, he made multiple requests to housing staff that he be moved to the unit's disability wing that would allow him to use an elevator. Although Plaintiff had been moved to a bottom bunk per the medical details, he claimed difficulty with his housing assignment because he was housed in a cell that required him to hop up and down a flight of stairs three times per day. Plaintiff's requests for a move, as well as his requests to speak with the RUM, were ignored or denied. (ECF No. 1 at PageID.8–9.)

On October 23, 2009, Plaintiff was finally able to speak with Defendant about his request for a move to the disability wing. Plaintiff arrived at Defendant's office without his crutches, as he was able to walk short distances without experiencing too much pain. (ECF No. 65-7 at PageID.413–16.) Plaintiff claims that he explained to Defendant the reason for his request to be moved to the unit with the elevator, *i.e.*, the difficulty he was having using his crutches on the stairs and the pain he experienced as a result of having to put pressure on his injured ankle when using the stairs. (ECF No. 1 at PageID.10.) Plaintiff claims that Defendant responded that he was tired of receiving complaints from staff about Plaintiff's constant requests to be moved and that Plaintiff would be moved to a different unit (not the unit he had requested) due to "constantly being a pest to staff." (*Id.*) Plaintiff told Defendant that he would not move to that unit because he had issues with some of the prisoners housed there and he feared for his safety. (ECF No. 65-7 at PageID.412–13.) Defendant became angry and told Plaintiff that unless Plaintiff complied with the order to move, Defendant would write Plaintiff a misconduct ticket for Disobeying a Direct Order and take his crutches. (*Id.* at 417–18.) Plaintiff confirmed that he would not move and told Defendant to write the ticket if he thought it was necessary. Plaintiff then retrieved his crutches

2

and gave them do Defendant. (*Id.* at PageID.418–19.) The following day, Defendant wrote Plaintiff a misconduct ticket for Disobeying a Direct Order. (ECF No. 1-13.)

The misconduct ticket was never processed because Plaintiff was transferred from LRF to his current facility several days later. During the transfer, Plaintiff was required to ride on a bus for several hours with shackles around his injured ankle and without his crutches. (*Id.* at PageID.11.) After Plaintiff arrived at the new facility, healthcare issued him another pair of crutches. (ECF No. 66-7.)

## II.  Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so

3

powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### III.  Discussion

#### A.  Defendant's Motion

##### 1.  Confiscation of Crutches

Plaintiff's first claim is that Defendant violated his rights under the Eighth Amendment by taking his medically-prescribed crutches.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations that occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Punishment that is without penological justification or involves the unnecessary and wanton infliction of pain also violates the Eighth Amendment's proscriptions. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). In other words, the Eighth Amendment prohibits "the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 183 (1976).

The unnecessary and wanton infliction of pain encompasses "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001). Determining whether denial of medical care amounts to an Eighth Amendment violation involves two steps. First, the court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need" sufficient to implicate the Eighth Amendment is "one that has been diagnosed by a physician as mandating treatment or one

that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Thus, the objective component is satisfied where a prisoner receives no treatment for a serious medical need. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier*, 238 F.3d at 742 (internal quotation marks omitted).

If the plaintiff satisfies the objective component, he must then demonstrate that the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837 (1994). *Id.* at 837. In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847). To satisfy this part of the analysis, the plaintiff must demonstrate that the defendant acted with "deliberateness tantamount to intent to punish." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005).

The two-step analysis for denial-of-medical-treatment claims also applies to a claim that a prison official intentionally interfered with a prisoner's prescribed medical treatment. *Estelle*, 429 U.S. at 104–05; *see also Egberto v. Nevada Dep't of Corrs.*, 678 F. App'x 500, 504–05 (9th Cir. 2017) (applying deliberate indifference standard to prisoner's claim that the defendants confiscated his walker that a doctor had recommended he use; "[s]ince this denial ran counter to the

instructions of the prisoner's treating physician, it could support a finding of deliberate indifference" (internal quotation marks and brackets omitted) (citing *Wakefield v. Thompson*, 177 F.3d 1160, 1164, 1165 (9th Cir. 1999)); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 428 (7th Cir. 1991) (deliberate indifference standard applied to prisoner's claim that defendant medical providers, who believed the plaintiff was malingering, transferred him to the prison hospital's psychiatric ward where a nurse removed the plaintiff's crutches and leg brace because those items were prohibited in the psychiatric ward); *Johnson v. Dalton*, No. 20-cv-435, 2021 WL 78879, at *5–6 (D. Colo. Jan. 7, 2021) (holding that the plaintiff stated a deliberate indifference claim because "defendant was clearly aware of plaintiff's need for a wheelchair, as she prescribed the wheelchair, and, when she took it away, she disregarded this need").

Defendant contends that he is entitled to summary judgment because Plaintiff is unable to establish either prong of his claim. First, Defendant contends that the record evidence shows that Plaintiff did not have a serious medical need because, at the time Plaintiff went to Defendant's office, he had only been diagnosed with a minor ankle sprain and had only been prescribed "periodic crutch access, an ankle wrap, and access to a lower bunk."[1] (ECF No. 65 at PageID.372.) Defendant further notes that Plaintiff conceded that he did not use his crutches to go to Defendant's office and said that he only needed them when he was going to be standing for extended periods of time. Finally, Defendant points out that Plaintiff admitted that he did not need a doctor or medical attention at the time he went to Defendant's office, and a lay person would not have known that Plaintiff was in pain or serious need of medical treatment. (*Id.* at PageID.374.)

---

[1] Contrary to Defendant's description, the medical detail in effect at the time did not limit Plaintiff to periodic crutch access and it specified an ankle brace rather than a wrap. (ECF No. 67-1 at PageID.489.)

Notwithstanding Defendant's contentions, a reasonable jury could conclude that Plaintiff's need for medical treatment was sufficiently serious. First, a physician had already determined that Plaintiff's ankle sprain was serious enough that Plaintiff should be permitted to use crutches and an ankle brace for more than a month to support the healing process. Thus, regardless of Plaintiff's presentation on October 23, a medical determination had already been made that Plaintiff needed to use crutches for a period of time. Second, although Plaintiff did not use the crutches to ambulate to Defendant's office, Plaintiff explained that he still needed them when he would be required to stand for longer periods of time. Plaintiff also indicated that he avoided using the crutches on the stairs because of previous incidents in which he had almost fallen while using the crutches on the stairs. (ECF No. 65-7 at PageID.414, 420–21.) Finally, Plaintiff's presentation on October 23 is irrelevant because Plaintiff was not seeking medical care on that date. Regardless of what Defendant perceived, a doctor had already determined that Plaintiff needed to use crutches. Defendant does not claim to be a physician, and thus could not have exercised medical judgment as to whether Plaintiff needed crutches; he had no such judgment to exercise that could overrule the physician's prior determination.

Defendant also contends that that he lacked the requisite culpable state a mind, but a reasonable jury could determine otherwise. It is undisputed that Defendant knew that Plaintiff had a medical detail for crutches. According to Plaintiff, Defendant believed that Plaintiff had become a "pest" to housing staff based on his repeated requests to be moved to the disability unit due to the problems he faced in using his crutches to ascend and descend the stairs in the unit. Defendant does not claim that some non-medical reason, such as a security issue, justified confiscating Plaintiff's crutches. Rather, if a jury credits Plaintiff's version of events, it could determine that Defendant confiscated the crutches as add-on punishment to the misconduct ticket. Therefore, Plaintiff has presented sufficient evidence to establish the subjective component of his claim. *See*

7

*Wakefield*, 177 F.3d at 1165 (noting that "a prison official acts with deliberate indifference when he ignores the instructions of the prisoner's treating physician or surgeon"); *Crossland v. Rowe*, No. 08-CV-91, 2008 WL 687018, at *3 (E.D. Ky. Mar. 12, 2008) (stating that "[t]he law is clear that if a prison official intentionally interferes with a regimen of prescribed [treatment] he or she violates the Eighth Amendment").

Accordingly, I recommend that the Court deny Defendant's motion for summary judgment on this claim.

### 2. Shackling Claim

It is unclear whether Plaintiff intends his claim about being shackled during transport from LRF to his current facility as a separate claim or as simply another aspect of his interference-with-medical-treatment claim based on Defendant's confiscation of his crutches. Regardless, Defendant is entitled to summary judgment on this claim. First, Plaintiff has presented no evidence that Defendant had any involvement in his transfer. The transfer order indicates that Plaintiff was transferred to accommodate another prisoner's programming needs that could only be met at LRF. (ECF No. 65-5.) The order was approved by D. Reed, not Defendant. Moreover, Plaintiff presents no evidence that Defendant placed the shackles, or caused them to be placed, on Plaintiff's ankles. Finally, Plaintiff fails to explain how the absence of his crutches could have caused the pain or injury from the shackles which Plaintiff claims occurred while he was riding on the bus.

It is well established in the Sixth Circuit that to state a cognizable claim under Section 1983, a plaintiff must allege personal involvement by each of the named defendants. *See Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995). A plaintiff must present evidence of the defendant's involvement in the alleged constitutional deprivation to defeat a summary judgment motion. *Bennett v. Schroeder*, 99 F. App'x 707, 713 (6th Cir. 2004); *see also Lentz v. Anderson*, 888 F. Supp. 847, 850 (N.D. Ohio 1995) ("Because there is no evidence that Governor Voinovich,

8

Department of Rehabilitation and Correction Director Wilkinson, OPI Director Anderson, and OPI Manager Mustard were personally involved in the prison's decision-making process which led to plaintiff's allegations of cruel and unusual punishment, they will be dismissed from any § 1983 liability."). Here, Plaintiff fails to show that Defendant was personally involved the transfer or shackling of Plaintiff.

Therefore, I recommend that Defendant be granted summary judgment on the shackling claim.

### 3. Official Capacity Claim

Defendant contends that Plaintiff's official-capacity claim is subject to dismissal because it is barred by the Eleventh Amendment. Defendant is correct that Plaintiff's claim for damages against him in his official capacity is barred by the Eleventh Amendment. *Cady v. Arenac Cnty.*, 574 F.3d 334, 344 (6th Cir. 2009). Plaintiff concedes that the Eleventh Amendment bars his official-capacity claim, but correctly recognizes that he may sue Defendant in his individual capacity. (ECF No. 69 at PageID.519.) Accordingly, the official-capacity claim should be dismissed.

### 4. Qualified Immunity

Finally, Defendant contends that he is entitled to qualified immunity. The doctrine of qualified immunity provides that government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999). An "objective legal reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). "Qualified immunity balances two important interests—the need to hold public officials

accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The qualified immunity inquiry requires a court to decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 232. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. As set forth above, it is clearly established that a prison official's intentional interference with a prisoner's prescribed medical treatment can amount to deliberate indifference under the Eighth Amendment. *Estelle*, 429 U.S. at 104–05. In addition, for the reasons set forth above, Plaintiff has presented sufficient evidence to create an issue of fact that Defendant, without justification, confiscated the crutches that a physician had recommended Plaintiff use to aid in the healing of his ankle. Accordingly, Defendant is not entitled to qualified immunity on Plaintiff's claim. *See Cameron v. Seitz*, 38 F.3d 264, 273 n.2 (6th Cir. 1994) ("Summary judgment would be inappropriate . . . if there were a factual dispute as to an issue on which the question of immunity turns or if the undisputed facts show that the defendant's conduct violated clearly established rights.") (citing *Poe v. Haydon*, 853 F.2d 418, 426 (6th Cir. 1988)).

### B.  Plaintiff's Motion

Plaintiff contends that he is entitled to summary judgment on his claims because he has presented sufficient evidence to support his allegations. I recommend that Plaintiff's motion be denied for several reasons.

First, for the reasons set forth above, Defendant is entitled to summary judgment on Plaintiff's shackling claim. Second, Plaintiff's motion is untimely. Pursuant to the Amended

Standard Case Management Order issued on March 24, 2021 (ECF No. 40), dispositive motions were due by August 19, 2021. Plaintiff did not sign or mail his motion until August 20, 2021. (ECF No. 66 at PageID.447–48.) Thus, Plaintiff's motion is untimely even under the "mailbox rule" applicable in Section 1983 prisoner cases. *See Aldridge v. Gill*, 24 F. App'x 428, 429 (6th Cir. 2001) (citing *Cooper v. Brookshire*, 70 F.3d 377, 378 (5th Cir. 1995)). Finally, Plaintiff, as the party with the burden of proof, has not shown that "no reasonable trier of fact could find other than for the moving party." *Calderone*, 799 F.2d at 259. In fact, Defendant denies confiscating Plaintiff's crutches. (ECF No. 66-4.) Thus, at a minimum, an issue of fact remains as to Plaintiff's core factual allegation that Defendant took his crutches. Moreover, whether Defendant was deliberately indifferent to Plaintiff's medical needs remains an issue for the jury.

Accordingly, I recommend that the Court deny Plaintiff's motion for summary judgment.

### IV. Conclusion

For the foregoing reasons, I recommend that the Court **deny** Defendant's motion for summary judgment (ECF No. 64) on Plaintiff's claim that Defendant was deliberately indifferent to Plaintiff's medical need by confiscating his crutches but **grant** the motion on Plaintiff's shackling claim and on Plaintiff's official capacity claim. In addition, I recommend that the Court **deny** Defendant qualified immunity. Finally, I recommend that the Court **deny** Plaintiff's motion for summary judgment. (ECF No. 66.)

Dated: October 19, 2021    /s/ Sally J. Berens
　　　　　　　　　　　　　　　　　　　SALLY J. BERENS
　　　　　　　　　　　　　　　　　　　U.S. Magistrate Judge

### NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

11

objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).